## Reed *against* Dickey.

A defendant in ejectment will not be permitted to avail himself of a breach of contract, in relation to the land in controversy, by one under whom he claims, in order to exclude evidence which, if the contract had been complied with, would have been competent.

The declarations of one under whom a party in ejectment claims may be given in evidence against him, if such declarations were made during the time the witness was the occupier of the land.

ARMSTRONG county.

*William Reed,* who survived *Victor Dupont,* assignees of *Archibald M'Call,* brought this ejectment against *Archibald Dickey* and *William Dickey,* to recover the possession of four hundred and twenty acres of land. On the trial, the plaintiff offered in evidence an agreement of February 1800, between *Archibald M'Call* and *Alexander Campbell,* to be followed by proof that *Campbell* sold the land to *Templeton,* who sold to *Archibald Dickey,* one of the defendants. The material part of the agreement is this.

" Witnesseth, that the said *Alexander,* for and in consideration of the covenants hereinafter mentioned on trust of the said *Archibald* to be done and performed, doth covenant to and with the said *Archibald M'Call,* that he now has the only actual settlements on two certain tracts of land, surveyed for the said *Archibald M'Call,* in Gapin's district, north and west of the Alleghany river, on the heads of Buffaloe, surveyed in the names of *John Pell, Sen.* and *Nicholas Day,* and that he will continue, or cause to be continued, the same on the said land, agreeably to the provisions of the act of assembly of the 3d of April 1792, for the space of five years from his first settling the same, and hold the same for the said *Archibald M'Call.* In consideration whereof the said *Archibald M'Call* doth covenant to and with the said *Alexander,* that the said *Alexander* having fulfilled his covenants aforesaid, he will at the expiration of the said term convey and assure unto the said *Alexander,* or his assigns, three hundred acres of the tract surveyed in the name of *John Pell,* including the improvements of the said *Alexander,* the same to be taken off the north end of the tract, at the expiration of the aforesaid term, and will warrant and defend the same."

This evidence was objected to, on the ground that the plaintiff must first show that an improvement and settlement had been made by *Campbell,* at the date of the said agreement. The court sustained the objection, and the evidence was rejected, which was the first error alleged.

The plaintiff proposed to ask a witness, what *Philip Templeton,* who had once owned the land, said respecting the title to it, and his

[Reed v. Dickey.]

knowledge of *Archibald M'Call's* claim; which was objected to, and rejected, which was assigned as the second error.

*Bredin,* for plaintiff in error.
*Blair,* for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—In this suit, which was an action of ejectment, the plaintiff offered in evidence, an article of agreement, dated the 2d of February 1800, between *Archibald M'Call,* under whom he claims, and *Alexander Campbell,* accompanied with an offer to show, that *Campbell* sold to *Philip Templeton,* who sold to *Archibald Dickey,* one of the defendants. The testimony was objected to, on two grounds. First, that the agreement was not duly proved, and secondly, that testimony ought previously to have been given of an improvement and settlement of *Campbell,* before and after the date of the agreement, according to law. The court decided, that the agreement was duly proved, but were further of the opinion, that such proof of improvement and settlement, ought first to be given. The exclusion of the testimony is one of the errors assigned. The article of agreement was the first link in the chain of title, and contained a contract, which is not uncommon in that section of the state, nor opposed, that I can perceive, either to the words or spirit of the act of 1792. It is material, to observe the relative situation of the parties, as contained in the plaintiffs' offer. The plaintiffs offer to prove, that *Campbell* sold to *Templeton,* who sold to *Dickey,* one of the defendants; the effect of which testimony is to make this a contest of the same nature, as if the original contracting parties were now before the court. Is it then competent for *Campbell,* or which is the same thing, those who claim under him, to object that no settlement has been made on the land? or, in other words, can he allege his own default, as a reason for a non compliance with the contract? In the article of agreement, *Campbell* avers, that he had made a settlement, and covenants that he will continue the same agreeably to the provisions of the act of the 3d of April 1792. In consideration whereof, *M'Call* entered into the covenant contained in the article. *Campbell* then is estopped from denying that a settlement was made within the true intent and meaning of the act. He cannot be permitted to allege his own breach of contract, as a reason for withholding the possession from the plaintiff. He stands in a different situation from a stranger, against whom, doubtless, it would be necessary to prove a previous settlement. Besides, as between these parties, there is proof sufficient to throw the *onus probandi* on the defendant. We have the acknowledgement of *Campbell* under whom the defendant claims, that a settlement had been made, and also a covenant on his part to complete the title. As between the parties to the deed, it is of little worth whether the land was improved or not. The plaintiff is will-

U

[Reed v. Dickey.]

ing to take the title with all its imperfections on its head, and it is not for the defendants to gainsay it; for this would enable him to take advantage of his own default. The covenant in the article runs with the land and descends upon the occupiers with notice; and this is the situation of *Dickey*, under the proof which accompanied the plaintiffs' offer. *Campbell* covenants that he had made a settlement, and would continue it so as to complete the title. Had *Campbell* carried into effect his contract in good faith, *M'Call's* title would have been without exception. It is only on account of the default of *Campbell*, that a shadow rests upon it. The evidence conduced to prove the issue, and should have been received. It will be observed, that the case is put upon the special facts, and on the first objection; but whether the plaintiff has complied with his part of the contract, it is not now necessary nor is it intended to decide. Of this the defendants will have a right to avail themselves, when the question fairly arises.

The plaintiff in error also excepts to the opinion of the court, in refusing to receive evidence of what was said by *Philip Templeton*, as to his having purchased the land in despite of *Alexander Campbell* and his mother-in-law Mrs *Davidson*, and what he said as to his knowledge of the claim of *Archibald M'Call*. As this point is stated, we cannot say there is error. If these declarations were made during the continuance of his interest, they are evidence as well against himself, as those who claim under him. The propriety of the testimony depends upon two matters which do not distinctly appear. First, that the declarations were made when *Templeton* had an interest, and secondly, that *Dickey* claims under *Templeton*. The latter, the plaintiff was prevented from showing, by the exclusion of his first offer.

Judgment reversed, and a *venire de novo* awarded.